UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| MARK WHALEY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5: 24-339-DCR |
| ) | |
| V. ) | |
| ) | |
| DEFINITIVE ROOFING AND ) | **MEMORANDUM OPINION** |
| SPECIALTY COATINGS, LLC, et al., ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Through the prior Memorandum Opinion and Order, the Court granted Defendant/Counter Plaintiff Definitive Roofing and Specialty Coatings, LLC's ("Definitive Roofing") motion for summary judgment concerning Plaintiff/Counter Defendant Mark Whaley's breach of contract claim against it and further granted its counterclaim for breach of contract against Whaley. [Record No. 139] The Court determined that Whaley was the first to commit a material breach as a matter of law because he blocked Definitive Roofing from conducting a final walk through (a condition precedent to final payment and warranty issuance) to address purported ongoing leaks in the roof. *Id.* at 21–26. It further ascertained that Definitive Roofing was within its right to abandon the contract and demand damages. *Id.* at 25–26.

As the first to breach, Whaley is liable to Definitive Roofing for damages under the contract. And after determining liability, the undersigned directed the parties to submit briefs regarding the remainder of the monies owed under the contract that were *not* within Whaley's

possession. Because this tangential issue was presented on Definitive Roofing's motion for summary judgment on its counterclaim, the same standard applies here.

## Legal Standard

To prevail on its claim for damages under the contract, Definitive Roofing must demonstrate the "absence of material fact disputes on all of the essential elements of its claim" and that it is entitled to judgment as a matter of law. *League of Women Voters of Ohio v. LaRose*, 741 F. Supp. 3d 694, 705–06 (N.D. Ohio 2024) (citing *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012)); Fed. R. Civ. P. 56(a). At the summary judgment stage, the Court reviews all the facts and the inferences drawn from those facts in the light most favorable to Whaley. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A "'contracting party impliedly obligates himself to cooperate in the performance of his contract and the law will not permit him to take advantage of an obstacle to performance which he has created or which lies within his power to remove.'" *PBI Bank, Inc. v. Signature Point Condominiums LLC*, 535 S.W.3d 700, 718 (Ky. Ct. App. 2016) (quoting *Ligon v. Parr*, 471 S.W.2d 1, 3 (Ky. 1971)). Further, when one party refuses to perform part of the contract, that party is the first to breach and the other party has the right to treat that "'as a breach, to abandon the contract, and to depart from further performance on his own part and finally demand damages.'" *Hall v. Rowe*, 439 S.W.3d 183, 186 (Ky. Ct. App. 2014) (emphasis omitted) (quoting *W. Kentucky Coal Co. v. Nourse*, 320 S.W.2d 311, 314 (Ky. 1959)); *see also O'Bryan v. Mengel Co.*, 224 Ky. 284, 6 S.W.2d 249, 252 (1928). The rationale underlying the first-to-breach rule is that "'a wrongdoer should not be allowed to profit from his or her own wrongdoing.'" *ClubSpecialists Int'l, LLC v. Keeneland Ass'n, Inc.*, Civil Action No. 5:16-

345-KKC, 2018 WL 2050134, at *3 (E.D. Ky. May 2, 2018) (quoting *McMullin v. McMullin*, 338 S.W.3d 315, 323 (Ky. 2011)).

After a court determines which party was the first to breach, it may determine damages at summary judgment where "'mere computation [is] all that [is] needed to establish with reasonable certainty the damages owed from an unpaid fixed contract price.'" *Nash-Finch Co. v. Casey's Foods, Inc.*, No. 6:15-CV-00086-GFVT, 2016 WL 7106395, at *9 (E.D. Ky. Dec. 5, 2016), *aff'd*, 762 F. App'x 218 (6th Cir. 2018) (quoting *Service Financial Co. v. Ware*, 473 S.W.3d 98, 104 (Ky. App. 2015) quoting *3D Enters. Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 450 (Ky. 2005)) (internal quotation marks omitted). Ordinarily, damages for a breach of contract are for the amount "which would put an injured party into the same position it would have been had the contract been performed." *Crouch v. Bilbrey*, No. 2011-CA-002098-MR, 2013 WL 1003444, at *3 (Ky. Ct. App. Mar. 15, 2013) (citing *Hogan v. Long*, 922 S.W.2d 368, 371 (Ky. 1995)).

**Analysis**

The following information is outlined in the prior opinion, provided for in the contract, or undisputed by the parties:

1. The contracted cost of the roof repair was $429,069.00 that was to be paid for in two $214,534.50 installments. The first payment was due upon delivery of the materials. The second was due within 10 days of job completion and final walk-through inspection. If the balance due was not paid within 30 days, a 2% monthly compounding interest would accrue until paid.

2. The building's insurer issued Whaley a check in the amount of $319,990.68 for the roof repair. From that amount, Whaley paid the first $214,534.50 installment once the

- 3 -

materials arrived at the worksite.  However, he kept the remaining balance of $105,456.18[1] in his possession along with the $1,000.00 policy deductible, totaling $106,456.18.

3. Whaley was the first to breach the contract when he prevented Definitive Roofing from conducting its final inspection on April 8, 2024.  At that time, he had only paid the first installment.  Under the contract the second $214,534.50 installment became past due 30 days after April 8, 2024 (that is, on May 9, 2024).

4. Beyond the $106,456.18 in insurance proceeds and $1,000.00 policy deductible Whaley possessed, he still owed $108,078.32.  That amount reflected the roof's depreciation and was potentially recoverable once he provided proof of the roof repair completion to the building's insurer.

5. The contract's addendum includes that Definitive Roofing "agrees that payment delay by parties that Whaley has no control over will not be held against him in any way especially in terms of money owed by [the building's insurer], penalty or interest." [Record No. 94-10 at 133]  It also provides that "Whaley fully agrees to do everything in his ability . . . to assist [Definitive Roofing] with prompt approval and payment from [the building's insurer]." *Id.*

**Funds Within Whaley's Possession:** The first matter to be resolved is what portion of the outstanding $214,534.50 was within Whaley's possession at the time he breached the contract.  The parties appear to agree that Whaley had of $105,456.18 in his possession.  *See supra* at n.1; [Record Nos. 149 at 5 and 150 at 3].  Upon a closer reading of the contract's plain

---

[1] The undersigned regrets that the prior Order included a typographical error that impacted calculations in that Order and the litigants' subsequent briefs. [Record No. 139 at 27 (indicating that Whaley had $105,4**65**.18 of insurance proceeds in his possession rather than the correct amount of $105,4**56**.18).]

terms, however, the addendum provides that the $1,000.00 policy deductible was *also* in Whaley's possession at the time the second installment became due: "This will leave a balance of $105,456.18, this balance along with the policy deductible of $1,000.00 at that juncture would be the complete remaining balance in Whaley's possession." [*See* Record No. 150 at 2 (quoting Record No. 8-1 at 1 (the parties' contract)).] Thus, the amount within Whaley's possession totaled $106,456.18.

The parties both calculate the interest owed on the funds held by Whaley using a monthly interest rate of 2%, compounded monthly, over the period from May 9, 2024, through February 17, 2026,[2] (roughly 1.77 years). [*See* Record Nos. 149 at 5 and 150 at 3.] Applying this rate and duration to the principal amount of $106,456.18, the interest accrued totals $54,895.87, resulting in a total amount due of $161,352.05.

**Funds Not Within Whaley's Possession:** The remaining issue concerns the remaining $108,078.32 owed under the contract that was *not* in Whaley's possession. Definitive Roofing argued in its motion for summary judgment that it was entitled to that amount with contractual interest starting May 9, 2024 (30 days after Whaley breached). [Record No. 94 at 22] Alternatively, it asserts that Whaley disclosed in his Supplemental Discovery Responses on September 25, 2025, that his lawsuit against the building's insurer "for damage that occurred on or about March 31, 2022, . . . has since been resolved through settlement." [Record No. 149 at 2] It further provides that Whaley's Amended Initial Disclosures indicate that the building has an insurance policy (1ABPKY05132168600) that is in addition to the one that

---

[2] This is the date of the Court's prior Memorandum Opinion and Order granting summary judgment on Definitive Roofing's counterclaim for breach of contract against Whaley. [Record No. 139]

- 5 -

paid out on the $429,069.00 claim (THFG00001HIBP-46695-02). *Id.* at 3. It does, however, acknowledge that Whaley does not believe that the additional policy would provide any coverage for the claims he had against the defendants. *Id.* To support its claim that Whaley, at a minimum, has the remaining $108,078.32 in his possession, it notes that he had sought $312,000.00 in default judgment (which has since been vacated) against the building's insurer in the state lawsuit. *Id.* at 3 n.3.

Definitive Roofing represents that Whaley waited until the last day of discovery to disclose the insurance settlement. [Record No. 149 at 3] As a result, it could not determine the settlement amount or when the funds were obtained. *Id.* at 3–4. Nonetheless, Definitive Roofing insists that Whaley can no longer rely on the addendum's language about "payment delay" for funds he has no control over. *Id.* at 4. It admits that it cannot prove the exact date Whaley received the settlement, but argues that it had to have been by the date he supplemented his discovery responses (September 25, 2025). *Id.* at 5. Notwithstanding any settlement or additional insurance policy, Definitive Roofing maintains that the contract Whaley signed was clear that it was to be paid $429,069.00 for the roof repair.

Whaley asserts that, based on the contract's plain terms, the 2% interest only applied to the funds that were in his possession at the time the contract was drafted. [Record No. 150 at 2] Thus, any subsequent funds provided by the insurer for the roof repair are not subject to a penalty even if he held them in his possession instead of paying Definitive Roofing. *See id.*

The section of the addendum Whaley cites appears to support his conclusion that no penalty may be owed on the funds not in his possession when the contract was drafted. [*See* Record No 150 at 2.] That said, he omits the next paragraph that includes "Whaley fully agrees to do everything in his ability . . . to assist [Definitive Roofing] with prompt approval and

payment from [the insurer to Definitive Roofing] once the check is received and clears the bank." [Record No. 8-1 at 1]  And he does not claim that he acted promptly to secure and deliver Definitive Roofing the remaining funds.  [*See* Record No. 150.]  Nor does he maintain that he did not receive the roof's depreciation amount from the insurer or mention that he has since settled with the insurer.  *See id.*

At the outset, the undersigned must consider whether Whaley is entitled to rely on the contract's provisions that benefit him as he was the first to breach.  Specifically, that "payment delay by parties that Whaley has no control over will not be held against him in any way especially in terms of money owed by [the building's insurer], penalty or interest." [Record No. 94-10 at 133]  Essentially, Whaley argues that, under the contract's plain terms, he cannot be charged interest on the outstanding funds.  But it is well established that "before one may obtain the benefits the contract confers upon him, he himself must perform the obligation which is imposed upon him." *Nourse*, 320 S.W.2d at 314 (citation omitted).  Here, Whaley failed to perform his obligation to allow the final walk-through inspection.

Once Whaley breached the contract, Definitive Roofing was within its right to cease its own performance and immediately demand damages.  *See Hall*, 439 S.W.3d at 186.  One limit on damages is that they "must have relation to the nature of the contract breached and the results which the parties must have anticipated would flow from the breach." *Olive Hill Limestone Co. v. Gay-Coleman Const. Co.*, 244 Ky. 822, 51 S.W.2d 465, 467 (1932).  Here, Whaley signed the contract for the roof repair and breached the contract.  Whaley being liable for the remaining $108,078.32 owed is related to the nature of the contract and was a foreseeable outcome of his breach.  *Id.*  The undersigned reiterates that a "wrongdoer should

not be allowed to profit from his or her own wrongdoing." *ClubSpecialists Int'l*, 2018 WL 2050134, at *3.

All that said, Whaley does not appear to dispute that he owes the outstanding $108,078.32, but instead insists that he should not be charged interest on that amount. [*See* Record No. 150.] But even if he did, it remains appropriate for the Court to determine damages at summary judgment where "'mere computation [is] all that [is] needed to establish with reasonable certainty the damages owed from an unpaid fixed contract price.'" *Nash-Finch Co.*, 2016 WL 7106395, at *9 (quoting *Ware*, 473 S.W.3d at 104 quoting *3D Enters.*, 174 S.W.3d at 450). Determining that no genuine dispute of material fact exists concerning Whaley's liability on the $108,078.32 remaining, the Court now turns to interest owed on that amount.

"'A provision in a contract providing for liquidated damages will be enforced, provided it is in actuality liquidated damages and not a penalty. If such provision is in fact a penalty it will not be enforced and the injured party will be entitled to recover the actual damages suffered.'" *Patel v. Tuttle Props., LLC*, 392 S.W.3d 384, 387 (Ky. 2013) (quoting *Fidelity & Deposit Co. of Maryland v. Jones*, 256 Ky. 181, 75 S.W.2d 1057, 1060 (1934)). "'Courts should, and do, enforce the agreement unless the proof clearly shows that according to the circumstances existing at the time of the execution the amount was grossly disproportionate to the damage which might flow from a breach.'" *Id.* (quoting *Coca–Cola Bottling Works (Thomas), Inc. v. Hazard Coca–Cola Bottling Works, Inc.*, 450 S.W.2d 515, 519 (Ky. 1970)). States differently, a court must determine whether the liquidated damages provision, "in light of the anticipated damages or actual loss caused by the breach of the contract, was reasonable or so unreasonably large that it is unenforceable on the grounds that public policy would deem

it to be a penalty." *Id.* (citing *Mattingly Bridge Co., Inc. v. Holloway & Son Construction*, 694 S.W.2d 702, 704–05 (Ky. 1985)).

Generally, liquidated damages include those "'[m]ade certain or fixed by agreement of parties or by operation of law.' *Black's Law Dictionary* 930 (6th ed. 1990). Common examples are a bill or note past due, an amount due on an open account, or an unpaid fixed contract price." *Nucor Corp. v. General Electric Co.*, 812 S.W.2d 136, 141 (Ky. 1991). "Interest for breach of a contract to pay a certain sum is recoverable as consequential (general) damages from the time the amount is due." *Univ. of Louisville v. RAM Eng'g & Const., Inc.*, 199 S.W.3d 746, 748 (Ky. Ct. App. 2005) (citation omitted).

As discussed previously, the contract imposed a 2% monthly penalty on funds that were past due. To recap, Definitive Roofing initially sought that penalty on the funds that were and were not in Whaley's possession from the date of breach in its motion for summary judgment. [Record No. 94 at 22] And after the Court ordered briefing on the funds *not* in his possession, Whaley insisted that he should not owe *any* interest on those funds based on the contract's plain terms.

Here, the parties dispute whether the contract imposes a 2% monthly penalty on the funds *not* within Whaley's possession. But as discussed, Whaley may not rely on the benefit the contract conferred upon him concerning the insurer's anticipated delay in releasing the funds. Nor can he rely on the provision absolving him of any penalty or interest under the contract as that too was a benefit. Furthermore, the outstanding $108,078.32 constitute liquidated damages because it is for an unpaid fixed contract price. *Nucor*, 812 S.W.2d at 141. And the 2% monthly interest imposed by the contract on the outstanding funds is reasonable and not so large that it is a penalty. *LJM 12, LLC v. H.C. Truitt Co.*, No. 2009-CA-000968-

MR, 2010 WL 4860375, at *2 (Ky. Ct. App. Nov. 12, 2010) (affirming the trial court's imposition of a contract's 2% monthly interest imposed for unpaid funds as reasonable); *Patel*, 392 S.W.3d at 387.

As a matter of law, the undersigned determines that the remaining $108,078.32 became due on the date Whaley breached on April 8, 2024, and past due on May 9, 2024, under the contract's terms. Whaley became liable for those funds at the time of his breach because such an outcome was foreseeable from his breach and, as the first to breach, he may not rely on a benefit the contract conferred on him concerning the insurer's timely release of the roof depreciation funds or absolving him from any penalty or interest.

Therefore, Definitive Roofing is entitled to interest on the principal amount of $108,078.32 at a monthly compounding rate of 2%, over the period from May 9, 2024, through February 17, 2026 (roughly 1.77 years). During this period, interest accrued in the amount of $55,732.35. Accordingly, Whaley owes the principal of $108,078.32 plus contractual interest of $55,732.35, for a total of $163,810.67.

**Miscellaneous:** Definitive Roofing also seeks continuing interest on the total damages award at the rate indicated in the contract. [Record No. 149 at 7] Because the contract specifies 2% (compounding) monthly interest on the funds in Whaley's possession, post judgment interest in that amount will be imposed on the $325,162.72[3] damages award from February 17, 2026 (the date of the Court's prior Memorandum Opinion and Order), until paid. *See* Ky. Rev. Stat. Ann. § 360.040(1),(3) (West) (providing that the contracted for rate of post judgment

---

[3] The sum of $161,352.05 for the first portion of damages and $163,810.67 for the second.

interest supplants the statutory rate and that the judgment amount subjected to interest may include the principal and interest); [Record No. 139].

Definitive Roofing acknowledges that if it is made whole under the contract, it may not seek additional punitive damages for its fraudulent inducement claim. [Record No. 149 at 6 (citing *Nami Res. Co., L.L.C. v. Asher Land & Mineral, L.T.D.*, 554 S.W.3d 323, 336 (2018)).] Because it will be made whole based on the above determinations, its fraudulent inducement claim against Whaley will be dismissed. Definitive Roofing further provides that if it "is awarded less than the amount it seeks in its breach of contract claim, Definitive Roofing will also seek to recover that shortfall through its quantum meruit and unjust enrichment claims." *Id.* at 7. The Court determined that Definitive Roofing is entitled to $325,162.72, which is the amount it sought in its motion for summary judgment. [*See* Record No. 94 at 22.] Thus, it cannot bring quantum meruit and unjust enrichment claims under the *contract*.

That said, Definitive Roofing represents that it "performed work for Whaley that was not addressed in the parties' written contract" and "seeks compensation for this work in the amount of $17,260." [Record No. 149 at 7] It asserts that the remaining claims for quantum meruit and unjust enrichment are equitable claims that may be tried without a jury. Indeed, "equitable claims, such as unjust enrichment [and quantum meruit], are heard and decided by the trial court, not the jury." *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 782 (Ky. 2017) (citations omitted). Therefore, the jury trial will be converted to a bench trial on the remaining claims.

## Conclusion

All told, Whaley owes Definitive Roofing $325,162.72 under the contract which consists of $161,352.05 for the first portion of damages and $163,810.67 for the second. This

includes the remainder owed under the contract $214,534.50 and $110,628.22 in interest. Post judgment interest on the principal amount of $325,162.72 will be imposed at 2%, compounded monthly, from February 17, 2026, until paid.

Based on the foregoing, it is hereby **ORDERED** as follows:

1. Defendant/Counter Plaintiff Definitive Roofing and Specialty Coatings, LLC's motion for summary judgment on its counterclaim for damages under the contract [Record No. 94] is **GRANTED** consistent with this Memorandum Opinion and Order.

2. Definitive Roofing and Specialty Coatings, LLC's counterclaim for fraudulent inducement against Mark Whaley is **DISMISSED**.

3. The previously scheduled jury trial set to begin on March 19, 2026, is **CONVERTED** to a **bench trial** at the same time and location.

4. The pretrial conference on March 10, 2026, will proceed as scheduled.

Dated: March 9, 2026.

<u>Danny C. Reeves, District Judge</u>
United States District Court
Eastern District of Kentucky