UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MARK WHALEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 24-339-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| DEFINITIVE ROOFING AND | ) | **MEMORANDUM OPINION** |
| SPECIALTY COATINGS, LLC, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant/Counterclaim Plaintiff Definitive Roofing and Specialty Coatings, LLC ("Definitive Roofing") has moved for attorney's fees and costs against Plaintiff/Counterclaim Defendant Mark Whaley pursuant to the Kentucky Consumer Protection Act's ("KCPA") fee-shifting provision, Kentucky Revised Statute ("KRS") 367.220(3) and Rule 54 of the Federal Rules of Civil Procedure. [Record No. 148]

The Court previously directed counsel for Whaley to show cause why sanctions under Rule 11(b) of the Federal Rules of Civil Procedure should not be imposed against him. [Record No. 139] The undersigned ordered additional sanctions briefing on Definitive Roofing's allegation that opposing counsel had interfered with its contract with Whaley when he accepted a contingency fee from insurance proceeds that were owed to Definitive Roofing. [Record No. 155]

Having reviewed the parties' arguments, the undersigned is satisfied that monetary sanctions are warranted against attorney James Barton Denham for violating Rule 11(b) and

- 1 -

that Whaley owes Definitive Roofing $19,996.25 in attorney's fees and $6,233.30 in costs as the prevailing party.

**Fee-Shifting (KCPA)**

Kentucky Revised Statute § 367.220 creates a private right of action for "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170[.]"  Previously, the Court ruled in favor of Definitive Roofing on summary judgment for this claim because Whaley failed to point to sufficient evidence upon which a jury could find that the roof was "primarily for personal, family or household purposes." [Record No 139 at 16–17 (quoting KRS § 367.220).] Therefore, Definitive Roofing was the prevailing party.

Pursuant to KRS 367.220(3), "the court may award, to the prevailing party, in addition to the relief provided in this section, reasonable attorney's fees and costs."  Those costs are circumscribed by Kentucky Rule of Civil Procedure 54.04 which provides for the recovery of costs incurred for "'filing fees, fees incident to service of process and summoning of witnesses, jury fees, warning order attorney and guardian ad litem fees,'" as well as "'costs of the originals of any depositions, . . . fees for extraordinary services ordered to be paid by the court, and such other costs as are ordinarily recoverable by the successful party.'" *Vescio v. Darnell*, No. 2013-CA-000189-MR, 2016 WL 354339, at *8 (Ky. Ct. App. Jan. 29, 2016) (quoting Ky. R. Civ. P. 54.04(2)).  Expert fees, however, are "not recoverable under CR 54.04 as a cost of the action" when they are not "specifically authorized by statute."  *Id.* (citing *Brookshire v. Lavigne*, 713 S.W.2d 481 (Ky. App. 1986)).  The KCPA's fee-shifting provision provides no

- 2 -

such authorization.  *Paul Miller Ford, Inc. v. Smith*, No. 2023-CA-0200-MR, 2024 WL 2490160, at *13 (Ky. Ct. App. May 24, 2024), *review denied* (Oct. 16, 2024).

Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  The scope of recoverable costs is constrained by 28 U.S.C. § 1920, which enumerates six categories of taxable costs:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation service[.]

Thus, "absent explicit statutory or contractual authorization for the taxation of the expenses of a litigants [expert] witness as costs, federal courts are bound by the limitations set out" in 28 U.S.C. § 1920.  *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987).

Definitive Roofing initially sought the full amount of attorney's fees ($79,985.00) that it incurred in this litigation.  [Record No. 148] After Whaley's response (and the undersigned's notice during the pretrial conference that it was not inclined to grant the full amount), Definitive Roofing suggested that a modified amount may be appropriate.  [Record No. 159 at 3–4] Specifically, it now seeks only half because the other half of those fees ($39,992.50) were incurred while pursuing its counterclaims.  *Id.* at 4.

Definitive Roofing contends that Whaley's breach of contract and KCPA claims stemmed from the "same nucleus of operative facts" and were "inextricably interwoven" such that the remaining half of the attorney's fees should not be apportioned.  [Record No. 159 at

4] It concedes that the negligence claim involved inquiry into different standards of care that were not part of those claims, but nonetheless insists that the difference is insignificant considering the overlapping facts. *Id.* Under this theory, Definitive Roofing argues in the alternative for two thirds of the $39,992.50 for a total of $26,662. *Id.*

Conversely, Whaley argues that counsel for Definitive Roofing billed hours that are disproportionate to the issues in the case. [Record No. 153 at 3, 6] For example, he represents that opposing counsel "spent approximately thirty-five hours drafting the Motion for Summary Judgment in October 2025." *Id.* at 6. But a review of the timesheet demonstrates that roughly twenty-one hours were spent drafting that motion in October. [*See* Record No. 148-3 at 11.] Whaley similarly misrepresents that the "forty point three hours in November 2025" were all used to draft "reply briefs and responses to various motions." *See id.* at 12.

Whaley's point is well-taken, considering that Definitive Roofing challenged his claims on summary judgment *and* moved for summary judgment on its own counterclaims in the same motion. [*See* Record No. 94.] And as discussed above, Definitive Roofing has since conceded as much. Further, while Definitive Roofing was defending Whaley's breach of contract claim it was unavoidably also prosecuting its own breach of contract counterclaim. That said, there is considerable overlap between Whaley's three claims. With that in mind, the Court finds that reasonable attorney's fees for defending the KCPA claim are one fourth of the total incurred by Definitive Roofing: $19,996.25.

Definitive Roofing seeks costs that total $14,058.90 which includes $7,825.60 in expert fees. [Record No. 159 at 5] Whaley, however, asserts that those costs are excessive and that expert fees are not recoverable under the KCPA. [Record No. 153 at 5] He insists that "Definitive Roofing must demonstrate that each cost was reasonably incurred in defending the

KCPA claim specifically, rather than litigating the broader case involving multiple claims, counter claims, and parties." *Id.* Definitive Roofing notes that Whaley does not "appear to dispute the compensability of court reporter and videographer fees of $5,673.90 and the deposition fee to Plaintiff's expert of $559.40." [Record No. 159 at 5] It further supports its request for those uncontested costs by noting that they "are payable under FRCP 54(d) and KRS 367.220(3)." *Id.*

The undersigned agrees with Definitive Roofing concerning the uncontested costs as they would be compensable under either statute. The undersigned likewise agrees with Whaley that expert fees are not costs recognized under either statute. Therefore, Definitive Roofing is entitled to only $6,233.30 in taxable costs as the prevailing party in the KCRA claim and this lawsuit.

### Sanctions[1]

"Rule 11 imposes both a requirement of 'prefiling inquiry into both the facts and the law,' and 'a continuing responsibility to review and reevaluate . . . pleadings and where appropriate modify them to conform to Rule 11.'" *Bojicic v. DeWine*, 145 F.4th 668, 671 (6th Cir. 2025) (internal citations omitted). Litigants and "counsel alike [must] undertake a 'reasonable inquiry' into the law and facts before filing a motion with the court." *Gilreath v. Clemens & Co.*, 212 F. App'x 451, 465 (6th Cir. 2007) (citing Fed. R. Civ. P. 11(b); *Albright*

---

[1] The Court declines to address sanctions concerning Definitive Roofing's allegation that Denham improperly received a contingency fee totaling one third of Mark Whaley's settlement with the insurer from the 2022 wind event because those funds (or at least a portion) were owed to Definitive Roofing. Definitive Roofing's allegation is essentially an interference with contractual relations claim against Denham which is not sufficiently developed on the record.

*v. Upjohn*, 788 F.2d 1217, 1221 (6th Cir. 1986); and *INVST Fin. Group v. Chem–Nuclear Systems, Inc.*, 815 F.2d 391, 401 (6th Cir. 1987)).

"An attorney violates the rule directly by 'presenting' an offending pleading to the court, such as 'by signing, filing, submitting, or later advocating it.'" *King v. Whitmer*, 71 F.4th 511, 531 (6th Cir. 2023) (quoting Fed. R. Civ. P. 11(b)). "Upon finding a violation of Rule 11, the court may sanction any attorney who 'violated the rule or is responsible for the violation.'" *Id.* (quoting Fed. R. Civ. P. 11(c)). In deciding whether sanctions are appropriate, the Court considers "whether the attorney's conduct was reasonable under the circumstances." *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997) (citing *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990)). Stated differently, an attorney's "honest mistake [is] irrelevant" because the "inquiry focuse[s] upon an objective test of whether the mistake was *reasonable*." *Colton v. Mem'l Drive Tr.*, 986 F.2d 1421 (table), 1993 WL 29663, at *3 (6th Cir. 1993) (emphasis added) (citing *Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533 (1991)).

The Advisory Committee Notes provide the following non-exhaustive factors for a court to consider when imposing sanctions:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants.

*Teno v. Iwanski*, 464 F. Supp. 3d 924, 955 (E.D. Tenn. 2020) (quoting Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments)).

- 6 -

Rule 11(c)(4) limits sanctions "to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  To be sure, the Court only may order payment of "reasonable attorney's fees and other expenses directly resulting from the violation" when raised "on *motion* and warranted for effective deterrence."  *Id.* (emphasis added).  As discussed in the prior Memorandum Opinion and Order resolving summary judgment, Definitive Roofing failed to comply with the rule's safe harbor provision in seeking attorney's fees.  [Record No. 139 at 34] Thus, that sanction is not available.

That said, sanctions "may include nonmonetary directives; [or] an order to pay a penalty into court."  Fed. R. Civ. P. 11(c)(4).  Monetary sanctions may be imposed *sua sponte* if the Court specifies the offending conduct and allows the offending party an opportunity to show cause why sanctions should not be imposed.  Fed. R. Civ. P. 11(c)(5)(B); *Colton*, 1993 WL 29663 at*3 (noting that "a district court has 'wide discretion' in determining the amount of the sanctions") (citations omitted).

Whaley's attorney James Barton Denham of Denham Property and Injury Law Firm was provided an opportunity to respond to the Court's show cause order concerning Rule 11 sanctions for the Rule 11 motion he signed and certified.  [Record No. 139 at 36] *First*, his response claims that "the incorrect version of the motion was filed" but he provides no context regarding the existence of the erroneous version which differed significantly in content, legal authorities, and relief sought.  [*See* Record No. 142 at 2.] *Second*, Denham represents that "[f]or unknown reasons, a scrivener error lists July 31, 2025 on [the] Rule 11(c)(2) motion that was filed."  *Id.  Third*, he asserts that the motion that was filed "erroneously requests this Court 'Strike Defendant's Motion to Amend Counterclaim' versus 'Deny Defendant's Amended Counterclaim.'"  *Id.  Fourth*, he acknowledges that the motion requests that the "Court 'Award

Plaintiff reasonable expenses incurred in responding to Defendant's motion, including attorney's fees;' versus 'Award Plaintiff reasonable expenses incurred in responding to Defendant's counterclaim, including attorney's fees.'" *Id.* Finally, he asserts that he had "no intention of requesting fees for a motion he did not respond to or work he did not do" and that those "errors were unintentional oversight." *Id.* at 3.

While Denham hits the high points, his response scrapes the surface of his motion's failure to comply with Rule 11. Suffice say that he certified service of an *entirely different* Rule 11 motion than the one he served on Definitive Roofing. [*Compare* Record No. 101 *with* Record No. 104-1.] And to be clear, these are not typos.[2] The undersigned is well acquainted with the occupational hazard typos impose in this line of work. Here, Denham filed a false certification that he served a particular motion (he did not) on a particular date (he did not) and *could not be bothered* to correct his misrepresentations to the Court until *after* a show cause order was entered. *Wershe v. City of Detroit*, No. 21-11686, 2024 WL 3625312, at *4 (E.D. Mich. Aug. 1, 2024) (collecting cases for the proposition that to comply with the safe harbor rule, the motion submitted to the Court must be identical to the one presented to opposing party).

"By presenting to the court a . . . written motion . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "it is not being presented for any improper purpose" and that

---

[2]     *Whiting City of Athens Tennessee*, -- F.4th --, No. 24-5918, 2026 WL 710568, at *1 (6th Cir. Mar. 13, 2026) (quoting *Davis v. Marion Cnty. Super. Ct. Juv. Detention Ctr.*, No. 1:24-CV-01918-JRS-MJD, 2025 WL 2502308, at *1 n.1 (S.D. Ind. Sept. 2, 2025) (the court calls something a "'misrepresentation of fact' only when it is clearly so" which does not include typos or sloppy citations as "those mistakes could be attributed to simple sloppiness in drafting, as opposed to a failure to comply with the basic obligations of legal counsel").

"the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(1), (3). Denham woefully failed to conduct a reasonable inquiry into the factual contentions in his Rule 11 motion. Had he taken a modest approach and referenced the safe harbor letter and motion that he sent to Definitive Roofing, he would have discovered his own error. Had he *read* the motion he filed, he would have discovered that it was the wrong one because it sought to 'Strike Defendant's Motion to Amend Counterclaim,' when the case was already at summary judgment. Most egregious of all is Denham's failure to remedy his error with the Court in the three intervening months after opposing counsel raised the discrepancy but before the show cause order was issued. Under the facts presented, Denham failed to conduct a reasonable inquiry into his motion's factual contentions and failed to promptly remedy those errors in violation of Rule 11(b).

Sanctions are necessary "to deter repetition of the conduct [by Denham] or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Specifically, ordering Denham to pay $7,000.00 in fines for failing to conduct a reasonable inquiry into the veracity of his statements in his signed Rule 11 motion, is an appropriate sanction. When fashioning a sanction sufficient to deter Denham's offending conduct from continuing, the Court considers his financial resources. Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments) (instructing courts to consider "the financial resources of the responsible person" and then an amount that "is needed to deter that person from repetition" as well as "what amount is needed to deter similar activity by other litigants"); *see also Jackson v. L. Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1230 (6th Cir. 1989) ("The district court must make some inquiry concerning an attorney's ability to pay a monetary sanction."). Denham Property and Injury Law Firm's website boasts that it has three offices, operates in nine different states, has

recovered over $20,000,000 for its clients, and identifies Denham as the firm's founder and principal attorney. Denham Property & Injury Law Firm, https://www.denham.law, https://www.denham.law/locations/, https://www.denham.law/j-bart-denham-esq/ (last visited Apr. 10, 2026). Because of Denham's financial success as an attorney, a lesser fine would fail to deter future similar conduct.

A fine is warranted because submitting "the wrong version of [a] Motion" and then failing to reply, withdraw, or amend that motion *after* opposing counsel identified the "error" "'unnecessarily burdens the court and the taxpayers.'" [Record No. 142 at 2]; s*ee Whiting City of Athens Tennessee*, -- F.4th --, No. 24-5918, 2026 WL 710568, at *9 (6th Cir. Mar. 13, 2026) (imposing fines under the court's inherent authority against attorneys who misrepresented facts and cited fake cases) (quoting *Noland v. Land of the Free, L.P.*, 114 Cal.App.5th 426, 336 Cal. Rptr. 3d 897, 914 (2025)). "A lawyer's misrepresentation of the law and facts heavily burdens the courts and their staffs" who must then "individually verify" each representation because they cannot "rely on any of [counsel's] briefing to truthfully explain the facts." *Whiting City of Athens Tennessee*, 2026 WL 710568, at *9. The "court can and should fine the offending lawyers to reimburse the court for its time." *Id.* (imposing $15,000.00, per attorney (3) and appeal filed (3), in court fines for citing fake cases and mispresenting facts).

Denham's response to the show cause order suggests that the errors in his motion were a result of him simultaneously responding to the defendants' motions. [*See* Record No. 142 at 3 ("These errors were an unintentional oversight in filing the wrong version of the motion while also responding to other motions.").] *First*, an attorney's obligation under Rule 11 neither waxes nor wanes depending on the number of motions pending against his client. *Second*, the Scheduling Order set dispositive and *Daubert* motion deadlines early in the

- 10 -

proceeding, and so their filing should have come as no surprise to Denham. *Third*, it was Denham (in consultation with Whaley) who decided how many defendants to sue, which corresponds with the number of motions filed.

Denham overlooks the irony in the story he crafted. His Rule 11 motion for sanctions against Definitive Roofing *violates* Rule 11 because it is replete with factual misstatements; is an entirely different motion than the one served; and under the circumstances, was likely filed for an improper purpose. His response to the show cause order boldly suggests that his errors were due to *his* mounting workload. Denham fails to see how *his* haphazard actions created unnecessary work for opposing counsel and the Court, which is an issue that Rule 11 seeks to remedy. *See* Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments) (suggesting that courts consider "what effect [the Rule 11 violation] had on the litigation process in time or expense" in fashioning a sanction).

And Denham's Rule 11 obligations did not terminate when he filed his motion. Once he was privy to his false certification, failure to comply with the safe harbor rule, and factual misstatements, he had a duty to *promptly* correct them. *See Ridder*, 109 F.3d at 293 (quoting Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments) (providing that "litigants may be sanctioned under the amended rule for continuing to insist upon a position that is no longer tenable")). Instead, Denham did nothing, which resulted in Definitive Roofing having to correct the record *in addition to arguing the merits of the motion*. This has been a theme in this proceeding. [*See e.g.*, Record No. 45 (correcting the record concerning the legal owner of the building).]; Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments) (instructing courts to consider whether "the improper conduct was . . . part of a pattern of activity, or an isolated event"). Likewise, Denham's inaction required the Court's time and resource to set

- 11 -

the record straight, order Denham to show cause, and conduct research and draft this order for sanctions.

Had Denham taken seriously his duty of candor, honesty, and professionalism before the Court, as well as his signed certification, hours of senseless work could have been avoided. And yet, his response to the show cause order does not acknowledge his failure to correct or withdraw his motion once opposing counsel identified its maladies. [*See* Record No. 142.] Nor does Denham apologize to the Court or opposing counsel for the unnecessary work he created for everyone, let alone acknowledge this reality. *See id.*

Were that not enough, there is also compelling evidence that Denham's motion was brought for an improper purpose "to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). The "improper purpose" analysis in Rule 11 "resembles the analysis of bad faith or an improper purpose under a court's inherent power to sanction a party by shifting fees." *Teno*, 464 F. Supp. 3d at 953 (citing *BDT Prods., Inc. v. Lexmark Intern., Inc.*, 602 F.3d 742, 752 (6th Cir. 2010)). That analysis contemplates that pursuing a meritless claim "may be *evidence* of bad faith but a court still 'must *find something more.*'" *Id.* (emphasis in original) (quoting *BDT Prods.*, 602 F.3d at 752 n.4, 753). "'Harassing the opposing party, delaying or disrupting litigation, hampering the enforcement of a court order, or making improper use of the courts are all examples of the sorts of conduct that will support a finding of bad faith or improper purpose[.]'" *Id.* (quoting *BDT Prods.*, 602 F.3d at 754).

As addressed previously, Denham's Rule 11 motion was meritless. Most obvious is that he failed to comply with the safe harbor provision because the motion he filed was never

presented to Definitive Roofing.[3]   And so, his filing of the motion coupled with his unwillingness to correct or withdraw it is evidence that it was brought "to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Fed. R. Civ. P. 11(b)(1).

The motion's timing also supports an inference of an improper purpose.  Definitive Roofing insists that Denham began threatening sanctions once it exposed that Denham "had filed different lawsuits in different courts on behalf of multiple clients all claiming to own the same roof."  [Record Nos. 104 at 2 and 108 at 12]  Further, if Denham sincerely believed that Definitive Roofing's fraudulent inducement claim violated Rule 11, he should have (at a minimum) opposed its motion to amend its counterclaim.  But he did not.  After waiting twenty-one days for a response from Whaley, the undersigned granted Definitive Roofing's unopposed motion to amend its counterclaim to include a fraudulent inducement claim.  [*See* Record Nos. 74 and 79.]

Denham also postponed the sanction motion filing until after dispositive motions were due, further bolstering that it was brought for an improper purpose.  [*See* Record Nos. 16 and 101 (demonstrating that deadline for dispositive motions was October 24, 2025, and Denham's Rule 11 motion was filed November 14, 2025).]  As Definitive Roofing argues, the motion appears to be an attempt to circumvent the deadlines in the Scheduling Order.  [Record No. 104 at 1]; *Teno*, 464 F. Supp. 3d at 953 (quoting *BDT Prods.*, 602 F.3d at 754) (noting that evidence of an improper purpose includes "hampering the enforcement of a court order, or making improper use of the courts").  Either way, it made no sense for the sanctions motion to

---

[3]      *Wershe v. City of Detroit*, No. 21-11686, 2024 WL 3625312, at *4 (E.D. Mich. Aug. 1, 2024) (collecting cases) (noting that "courts across the country who have addressed this question have held that, to comply with Rule 11's safe harbor provision, the motion filed with the court must be the *exact same* motion sent to the opposing party) (emphasis in original).

be tendered so late.  And if Denham's request for attorney's fees had been granted, he would have had considerable difficulty demonstrating that he mitigated those fees, considering that the fraudulent inducement claim had made it all the way to summary judgment by that point. [*See* Record No. 101 at 6.]; *INVST*, 815 F.2d at 404 (noting that counsel must mitigate damages when responding to an "adversary's unreasonable motion practices" when seeking compensation for attorney's fees) (citations omitted); *see also Gilreath*, 212 F. App'x at 467.

Finally, Denham neglected to respond to opposing counsel's claim that his use of a logo featuring a cartoon dog on his safe harbor letterhead came across as a prank, rather than a formal notice, underscoring that the motion was brought to harass.[4]  [*See* Record Nos. 104 at 2 n.1 and 142.] This too supports an inference that the motion was brought for an improper purpose.  Particularly here, where the cartoon dog logo differs from the scales of justice logo Denham Property and Injury Law Firm uses on its website which is the same one Denham uses in his email signature.

---

[4]      On the right is the logo displayed on Denham's firm website for comparison.  Denham Property & Injury Law Firm, https://www.denham.law (last visited Apr. 8, 2026).




Simply put, litigation is not a joke.[5]   And professionalism is not optional; it is paramount.

Attorneys, of all people, must take to heart the adage that "your word is your bond." Rule 11 attempts to codify that tenet because, without it, the legal profession could not stand. That tenet is no less important today than it was centuries ago when verifying facts or law was far more arduous because "[o]ur adversarial system works only when 'lawyers and courts alike are able to rely on one another's representations.'" *See Whiting City of Athens Tennessee*, 2026 WL 710568, at *7 (quoting *Azar v. Garza*, 584 U.S. 726, 730 (2018) (per curiam)). Without that trust, "legal advocacy would quickly become pointless." *Id.* (citing *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448–49 (S.D.N.Y. 2023)).   Rather than resolve cases on the merits, parties and courts alike would waste resources cross-checking every single assertion and correcting litigants' misrepresentations.   The legal profession plays a vital role in upholding our ordered society.   When lawyers succumb to advancing their own gain, whether it be in time saved by not verifying representations in filings or engaging in litigation tit-for-tat gameplay, everyone loses.

Based on the forgoing consideration and analysis, it is hereby

**ORDERED** as follows:

1.      Defendant/Counter Plaintiff Definitive Roofing and Specialty Coatings, LLC's motion for attorney's fees and costs [Record No. 148] is **GRANTED** consistent with this Memorandum Opinion and Order.

---

[5]      *See also*, *Order* ECF No. 6, *Essenberg v. Clinton, County of et al.*, No. 1:25-cv-368 (W.D. Mich. Apr. 28, 2025) (striking complaint featuring a "large multi-colored cartoon dragon dressed in a suit" because it is "distracting," "juvenile," and "impertinent," and the "Court is not a cartoon").

2.    Plaintiff/Counter Defendant Mark Whaley is **ORDERED** to pay Definitive Roofing and Specialty Coatings, LLC $19,996.25 in attorney's fees pursuant to KRS 367.220(3), and $6,233.30 in taxable costs pursuant to KRS 367.220(3) and Rule 54 of the Federal Rules of Civil Procedure.

3.    Attorney James Barton Denham is **ORDERED** to pay **$7,000.00** in fines and remit to the United States Clerk's Office for the Eastern District of Kentucky **within thirty days** for his violation of Rule 11(b) of the Federal Rules of Civil Procedure.

Dated:  April 13, 2026.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky